1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Anabel Ruiz, et al., individually and on behalf of
other persons similarly situated,

                Plaintiffs,

vs.

APCO Construction et al.,

                Defendants.

Case No.: 2:10-cv-1312-JAD-GWF

**Order**
**[Doc. 108, 128]**

      Plaintiffs Alfredo Damudio, Juan Magallenes, and Vicente Cuevas allege they were employees of All-American and Associates[1] who performed work on the Atrium project, a City of Las Vegas public-works construction project.[2]  Plaintiffs contend that All-American failed to pay them, and they seek to hold APCO Construction—the general contractor who subcontracted with their employer All-American—responsible for their unpaid wages under the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), the Nevada labor code, and Nevada common law.

      This case began as an action by numerous former All-American employees against the subcontractor,[3] its purported owners Jim and Donna Spallitta, and Penta Building Group, Inc. (the

---

    [1] Plaintiffs sued both All American and Associates and All-American Painting, Wallcovering, and Drywall.  Doc. 38.  A Clerk's entry of default has been entered against both entities.  For purposes of this order, they are collectively referred to as "All-American."  APCO's subcontract agreement is with All American and Associates.  *See* Docs. 108-3; 112-5.

    [2] Docs. 38 at ¶ 14; 112 at 1.

    [3] Plaintiffs sued and have obtained defaults against two All-American entities: All American Painting, Wallcovering, and Drywall, and All-American and Associates.  Docs. 1, 12, 102.

1   general contractor on the Hilton Grand Vacations project, which All-American was a subcontractor

2   on).  Doc. 38.  Default was entered against the All-American entities, Docs. 13, 102, Jim Spallitta is

3   deceased, and Donna Spallitta filed for bankruptcy protection.  Docs. 16, 17, 18, 24-11, 88.  The

4   Court dismissed the claims against Penta in 2011 and permitted Plaintiffs leave to add APCO as a

5   defendant.  Doc. 37.  These developments have left an active dispute only between three of the

6   Plaintiffs who claim they worked for All-American on the Atrium project (Zamudio, Magallanes,

7   and Cuevas) and general contractor APCO.[4]

8        APCO now moves the Court for various relief under the umbrella of a summary-judgment

9   motion.  Doc. 108.  The Court has exercised jurisdiction over this case on federal-question and

10  supplemental jurisdiction based on the Plaintiffs' pleading of FLSA claims.  APCO asks the Court to

11  grant summary judgment in its favor on the FLSA claims because APCO was not Plaintiffs'

12  employer—a prerequisite for a viable FLSA claim—and then decline to continue to exercise

13  supplemental jurisdiction over the remaining state-law claims.  APCO also contends that Plaintiffs

14  have no private right of action for their prevailing-wage, overtime, or waiting-time-penalty claims,

15  and their sole remedy is an administrative one with Nevada's Labor Commissioner under NRS

16  Chapter 338.  And, finally, APCO seeks judgment in its favor on Plaintiffs' contract claims arguing

17  that Plaintiffs are not parties to, or beneficiaries of, any contract with APCO.

18       Having considered the parties' papers on file and the oral arguments presented at the hearing

19  on this matter, the Court concludes that Plaintiffs have failed to demonstrate that APCO was

20  Plaintiffs' employer for purposes of the FLSA and grants summary judgment in APCO's favor on

21  Plaintiffs' FLSA claims.  The Court then declines to continue to exercise supplemental jurisdiction

22  over Plaintiffs' remaining state-law claims against APCO and dismisses those claims under 28

23  U.S.C. § 1367(c).  And finding that Plaintiffs' supplemental brief exceeds the scope of the Court's

24

25

26  _____

     [4] The moving papers and opposition both acknowledge that only these three Plaintiffs (and
     not Ruiz or Gomez) worked on the Atrium project, the only project that APCO is alleged to have
     been the general contractor on.  *See generally* Docs. 108, 112.  Plaintiffs' claims have been
27   conditionally certified as a collective action under the FLSA.  Doc. 80.

28

permission for Plaintiffs to submit citations to additional authorities after the summary-judgment hearing, the Court strikes the Plaintiffs' unsolicited 10-page brief.

**A.      APCO's Emergency Motion to Strike [Doc. 128]**

At the oral argument on APCO's motion for summary judgment, the Court authorized Plaintiffs to submit, via letter, several citations not provided in the original briefing, as well as authority for the proposition that the Court should certify a question to the Nevada Supreme Court. Plaintiffs exceeded those directions and submitted a 10-page supplemental brief that added a seven-page discussion of NRS § 608.150.  Doc. 127 at 1-7.  The unsolicited brief also raises new issues. *Id.* at 7.  APCO moves to strike it as a fugitive document, Doc. 128 at 2-3, and Plaintiffs dispute that it exceeds the Court's instructions and ask, alternatively, to permit it. Doc. 130 at 1-3.

Having reviewed the transcript of the hearing, the Court finds it did not "impliedly authorize[]" Plaintiffs to engage in a *carte blanche* revision of the arguments they chose to raise—or not raise—in their response to the motion for summary judgment or during the oral argument.  This motion was pending for more than a year before the hearing convened, and Plaintiffs had more than sufficient time to seek to supplement their filings with additional points during that time.  Plaintiffs have not offered good cause for this Court to consider their additional authorities (none of which are very recent) now.  The supplemental brief (Doc. 127) will be disregarded.

**B.      APCO's Renewed Motion for Summary Judgment [Doc. 108]**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).  When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).  If reasonable minds could differ on the material facts at issue, summary judgment is not appropriate because the purpose of summary judgment is to avoid unnecessary trials

when the facts are undisputed.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248-49.  The Court may only consider properly authenticated, admissible evidence in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c); *Orr*, 285 F.3d at 773-74.

### 1.    *Plaintiffs' FLSA Claims–Counts 1 and 2*

Plaintiffs allege that they were not paid at least a minimum wage in violation of 29 U.S.C. § 206 (Count 1), and overtime wages in violation of 29 U.S.C. § 207 (Count 2).  Doc. 38 at 9-11. Plaintiffs acknowledge that they were employed by All-American, not APCO, at the time All-American failed to pay them. Doc. 38 at ¶¶ 14-15, 42.  While they allege that All-American's owners are Plaintiffs' "employers or joint employers for purposes of the FLSA," *id.* at ¶ 23, they make no similar allegations against APCO.  Instead, they allege that APCO is liable with their defunct employer by operation of NRS § 608.150, which provides that "Every original contractor . . . for the  . . . construction . . . of any building . . . shall assume and is liable for the indebtedness for labor incurred by any subcontractor. . . ."  Nev. Rev. Stat. § 608.150(1); Doc. 38 at ¶ 60; Doc. 112 at

4.

A defendant must be an "employer" of the plaintiff in order to be liable under the FLSA. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1468 (9th Cir. 1983), *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Whether an entity is an employer under the FLSA is a question of law. *Torres–Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997).

Plaintiffs do not even attempt to demonstrate that APCO was an "employer" for purposes of their FLSA claim; they instead rely on NRS § 608.150 and try to bootstrap this statutory state law provision into a federal claim under the FLSA.[5] But whether a defendant qualifies as an employer under FLSA does not turn on state statutory provisions. "[D]etermination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'" *Bonnette,* 704 F.2d at 1469 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). "The touchstone is the economic relationship." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009). This "economic relationship" is analyzed through a number of factors, most importantly "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payment, (3) determined the rate and method of payment, and (4) maintained employment records." *Moreau v. Air France*, 356 F.3d 942, 946-47 (9th Cir. 2004); *Bonnette*, 704 F.2d at 1470.

Plaintiffs make no effort to demonstrate that APCO was their employer, and the Court's independent review of the admissible evidence in the record[6] finds no evidence to support APCO's

---

[5] *See* Doc. 112 at 4 ("APCO is liable for Plaintiffs' unpaid wages based on their status as a surety pursuant to Nevada statute, not because they are Plaintiffs' employer.")

[6] APCO attempts to introduce evidence through the declaration of its contract manager, Pelan, but the exhibits referenced do not match up with the descriptions in the declaration, Doc. 1-8-1; APCO admits this is likely because the declaration was retread from a previous motion. This sloppy effort fails to properly authenticate any exhibit offered by APCO. Plaintiffs' shot at authentication similarly misses the mark. Despite prior warning from the Court that their evidence did not pass authentication muster, *see* Doc.105 at 5-7, Plaintiffs failed to cure the deficiencies.

1   FLSA liability as an "employer" of All-American's laborers.  While the subcontract between APCO

2   and All-American[7] contains standard provisions permitting APCO to specify the pace and

3   scheduling of subcontractors' work, nothing suggests that APCO had the power to hire and fire All-

4   American's employees, supervise or control this subcontractor's laborers' work schedules or

5   conditions of payment by All-American, or determined the rate or method of payment.  And

6   although NRS § 338.070 required APCO to "keep or cause to be kept" certain employment records

7   provided by its subcontractors, the subcontractors had primary responsibility for collecting and

8   preparing those records.  *See id.* at § 338.370(6); *see also* Doc. 108-3 at ¶ 4.3 (cataloging

9   documentary items that All-American was required to prepare, maintain, and provide to APCO).

10  The Subcontract Agreement also clearly states "It is the Subcontractor's responsibility to maintain

11  an adequate work force to complete the project on schedule."  Doc. 108-3 at ¶ 3.4.  Considering the

12  totality of these factors, the Court finds that the evidence in this case could not cause a reasonable

13  jury to conclude that APCO was Plaintiffs' employer for purposes of their FLSA claim.  Indeed, in

14  their stricken supplement, they note that the Nevada Legislature considered—but rejected—attempts

15  to use this legislation to make general contractors "employers" of their subcontractors, opting

16  instead for a surety-like relationship.  Doc. 127 at 2 (quoting 1929-1930 Nev. Comm'r Labor

17  Biennial Rep. 7, reprinted in 1 Appx to Journals S. & Assemb., 35th Sess. (Nev. 1931)).

18       Even if employer status could be established by state statute, NRS 608.150 would not do the

19  job.  As Plaintiffs themselves concede, this statute essentially turns general contractors into "sureties

20  ─────────────

21  Plaintiffs' affidavits—translated from Spanish to English—want for an affidavit from the translator
    attesting to a true and correct translation and are rife with multiple layers of hearsay for which no
    exception has been provided.  *See* Docs. 112-1 to -3.  Purported pay stubs, timecards, emails,

22  handwritten notes, and letters are not authenticated in any way.  *See* Docs. 112-4 to -15.  And
    although Plaintiffs contend that Exhibits E-I, K, and P were produced by or disclosed by APCO

23  during discovery, they offer no declaration in that regard, the Bates stamps do not suggest the origin
    of the documents, and Plaintiffs note that APCO was not willing to stipulate to their admissibility.

24  *See* Doc. 112-6; Doc. 112 at 2 n.1.  The parties' failure to properly authenticate these documents
    requires this Court to exclude them from consideration when deciding this motion.  *See Orr*, 285

25  F.3d at 773-74.

26       [7] Although neither party has properly authenticated this exhibit, both attach it and rely on it,
    neither challenges the authenticity of the agreement, and the document (Doc. 108-3) contains

27  sufficient indicators of its authenticity to permit the Court to consider it for purposes of this motion.

28                                        Page 6 of  10

1  for the labor-related debts of their subcontractors," not into employers. Doc. 112 at 7. And although

2  courts have applied NRS § 608.150 to hold contractors responsible for amounts due under collective

3  bargaining agreements, *see, e.g., Trustees of Constr. Indust. v. Hartford Fire Ins.*, 578 F.3d 1126

4  (9th Cir. 2009); *Tobler & Oliver Constr. Co. v. Board of Trustees of the Health and Ins. Fund for*

5  *Carpenters Local Union No. 971*, 442 P.2d 904 (Nev. 1968), Plaintiffs offer nothing to suggest that

6  this surety-liability statute alone can supply the economic relationship required to hold APCO

7  directly liable as an employer under the FLSA.

8       As Plaintiffs have failed to demonstrate that APCO was their employer or joint employer or

9  that NRS 608.150 can substitute for the employment relationship the FLSA requires, Plaintiffs'

10  FLSA claims against APCO fail as a matter of law. Summary judgment is granted in APCO's favor

11  on Plaintiffs' FLSA claims (counts 1 & 2).

12       ***2.   Nevada State Law Claims against APCO–Counts 3-8***

13       Before turning to Plaintiffs' remaining claims against APCO—all of which arise (if at all)

14  under Nevada state law—the Court first considers its jurisdiction over these claims. Federal

15  jurisdiction in this case is premised on the pendency of the FLSA claims and the Court's ability to

16  exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* Doc. 38 at ¶ 17; 28 U.S.C. §

17  1367. Supplemental jurisdiction is a doctrine of discretion, not of a plaintiff's right. *City of Chicago*

18  *v. Int'l College of Surgeons,* 522 U.S. 156, 172 (1997); *United Mine Workers of Am. v. Gibbs,* 383

19  U.S. 715, 726 (1966). A federal district court may nonetheless decline to exercise supplemental

20  jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law; (2)

21  the claim substantially predominates over the claim or claims over which the district court has

22  original jurisdiction; (3) the district court has dismissed all claims over which it has original

23  jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining

24  jurisdiction." 28 U.S.C. § 1367(c). The decision whether to decline to exercise supplemental

25  jurisdiction under Section 1367(c) should be informed by the values of economy, convenience,

26  fairness, and comity as explained by the Supreme Court in *Gibbs*. *Acri v. Varian Associates, Inc.,*

27  114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

28

1    Economy, convenience, fairness, and comity compel this Court to decline to exercise

2  supplemental jurisdiction over Plaintiffs' remaining claims against APCO under 28 U.S.C. §

3  1367(c)(1) & (2).  The entry of summary judgment in APCO's favor on the FLSA claims leaves

4  Plaintiffs with only state law claims against APCO.  Little else remains in this case.  Plaintiffs'

5  claims against Penta were dismissed; Jim Spallitta is deceased; and clerk's defaults were entered

6  against the All-American entities years ago.  *See* Docs. 12, 102.  Although Plaintiffs retain claims

7  against Donna Spallitta, the vitality of those claims remains unclear after her bankruptcy filing.

8  Doc. 83.  And although Donna Spallitta pled crossclaims against APCO in May 2011,[8] nothing in

9  the record suggests that she has made any effort to prosecute those crossclaims or actively

10  participate in this case in recent years.[9]  As a result of the entry of summary judgment on the FLSA

11  claims against APCO, the only actively litigated claims remaining in this case are the state law

12  claims against APCO (counts 3-8).  At a minimum, these claims "substantially predominate[] over

13  the stayed FLSA claims remaining against or by Donna Spallitta (which do not appear to be actively

14  litigated) and the FLSA claims against the All-American entities (which are no longer being actively

15  litigated because defaults have been entered).  *See* 28 U.S.C. § 1367(c)(2).

16    Plaintiffs' claims remaining against APCO also present novel or complex issues of Nevada

17  law including: whether Plaintiffs enjoy a private right of action for prevailing wages, waiting-time

18  penalties, and overtime payments; whether Plaintiffs' state law claims are subject to dismissal

---

20    [8] The crossclaim was originally brought by Spallitta *and* All-American Painting, Drywall &
Wallcovering, LLC.  Doc. 46.  All-American Painting, Drywall & Wallcovering's answer and
21  counterclaim was stricken because this fictitious entity did not retain counsel.  *See* Docs. 98, 101,
106.

22
    [9] Donna Spallitta's attorney withdrew in April 2012, leaving her in pro se status.  *See* Doc.
23  91.  Since then, mailed filings to her have been returned as undeliverable, she has failed to update
her address with the Court, and it does not appear that she has participated in this case in any
24  capacity since being relieved of counsel more than two years ago.  *See* Docs. 107, 111, 122, 124.
APCO did not mention Donna Spallitta's pending crossclaims against it (none of which are FLSA
25  claims) in its motion for summary judgment, and if these claims remain pending, the Court's
decision to decline to continue to exercise supplemental jurisdiction over Plaintiffs' state-law claims
26  against APCO may leave APCO to fight on both state and federal fronts.  But APCO voiced no
concern about the potential for having to divide its efforts when it asked this Court to dismiss
27  Plaintiffs' remaining state-law claims, and the Court will rely on that silence.

28

because they were not presented to the State Labor Commissioner in the first instance; whether Plaintiffs can use Nevada's minimum wage law (NRS § 608.250) to recover a portion of their pay on this public-works, prevailing-wage project; whether Plaintiffs are intended third-party beneficiaries of the public-works contract between APCO and the City of Las Vegas; whether NRS Chapter 338 preempts Plaintiffs' contract claims; and the scope of APCO's surety-like liability (if any) under NRS § 608.150.  Nevada's state courts are better suited to address and resolve these uniquely state-law issues existing between Nevada Plaintiffs and this Nevada corporate defendant.  Although by declining to retain supplemental jurisdiction over these claims against APCO will not result in the complete dismissal of this action because (stayed) claims exist against Donna Spallitta, the Court finds that judicial economy will still be served because it remains to be seen what, if any, life will remain in those claims after the bankruptcy proceedings conclude.[10]  Although the decision to decline to retain jurisdiction over the remaining claims against APCO may theoretically force Plaintiffs to litigate their claims against APCO in state court while concluding this litigation against Donna Spallitta in federal court, the Court finds that, on balance, all considerations weigh in favor of declining the exercise of federal jurisdiction over the remaining APCO claims, and dismissal of these claims will most sensibly accommodate the values of economy, fairness, and comity.  As the Court is declining to exercise jurisdiction over these remaining claims, APCO's motion for summary judgment on these claims is denied as moot.

## Conclusion

Accordingly, based upon the foregoing reasons and with good cause appearing and no reason for delay,

_____

[10]  A review of the docket in Spallitta's bankruptcy proceeding (12-12783-BAM) reveals that the Chapter 7 Trustee entered a "Report of No Distribution" in April 2012, suggesting that there was not enough property in her bankruptcy estate to justify liquidation and distribution to unsecured creditors.  She was discharged on June 13, 2012, just three months after filing her notice of bankruptcy with this Court, and the bankruptcy case was closed nearly two full years ago.  The Court does not rely on these developments in the bankruptcy docket and includes them only for additional context.

It is **HEREBY ORDERED** that Defendant APCO's Emergency Motion to Strike Plaintiffs' Supplemental Brief Addressing Issued Raised at the Hearing of November 13, 2013 **[Doc. 128] is GRANTED**;

It is **FURTHER ORDERED** that Defendant's Renewed Motion for Summary Judgment **[Doc. 108] is GRANTED in part.  Judgment is entered in APCO's favor on Plaintiffs' Counts 1 & 2 (the FLSA claims).**  The Court declines to continue to exercise supplemental jurisdiction over the remaining claims against APCO and **DISMISSES those claims (Counts 3, 4, 5, 6, 7, 8) without prejudice** under 28 U.S.C. § 1367(c); therefore the motion for summary judgment is denied as moot on all state-law claims.

DATED: June 17, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE